1  Philip D. Kohn (State Bar No. 90158)
    City Attorney, City of Laguna Beach
2  Todd O. Litfin (State Bar No. 181152)
   Mark J. Austin (State Bar No. 208880)
3  Glen Worthington (State Bar No. 244507)
          gworthington@rutan.com
4  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Fourteenth Floor
5  Costa Mesa, California 92626-1931

6  Telephone:  714-641-5100
   Facsimile:   714-546-9035
7
   Attorneys for Defendants
8  CITY OF LAGUNA BEACH,
   LAGUNA BEACH POLICE DEPARTMENT
9  CHIEF MICHAEL SELLERS, SERGEANT
   GUY MILLER, SERGEANT JENNY JONES
10 and OFFICER DUSTIN STAAL

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  TERRY R. DUNLEVY, an individual; KATHLEEN A. DUNLEVY, an individual, | Case No. SACV 07-00398-JVS (MLGx) |
| 15 | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 16              Plaintiffs, | |
| 17       v. | |
| 18  CITY OF LAGUNA BEACH, a public entity, LAGUNA BEACH POLICE DEPARTMENT CHIEF MICHAEL SELLERS, an individual, SERGEANT GUY MILLER, an individual, SERGEANT JENNY JONES, an individual, OFFICER STARL, an individual, AND DOES 1 THROUGH 10, inclusive, | |
| 19 | |
| 20 | **Hearing:** |
| 21 | Date:   October 6, 2008 Time:  1:30 p.m. Ctrm.: 10-C          U.S District Judge James V. Selna |
| 22 | |
| 23              Defendants. | Date Action Filed:  April 6, 2007 Trial Date:              December 9, 2008 |

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law
972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1

# TABLE OF CONTENTS

2

Page

3   NOTICE.................................................................................................................. 1

4   MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 5

5   I.    INTRODUCTION AND SUMMARY OF ARGUMENTS. .......................... 5

6   II.   STATEMENT OF FACTS................................................................................ 8

7        A.    In Response to a Call, LBPD Officers Find and Apprehend
8              Dunlevy at the White House Restaurant and Bar in Laguna
              Beach................................................................................................... 8

9        B.    As Dunlevy is Removed from the White House, He
              Resists, Resulting in a Brief Struggle to Handcuff and
10            Restrain Him; He is Arrested for Public Intoxication. ......................... 9

11       C.    Dunlevy is Placed in a Holding Cell at the Jail; The
              Arresting Officers Then Leave the Facility and Continue
12            Their Patrols........................................................................................ 10

13       D.    After Being Active In His Cell for Two Hours, Dunlevy
              Lays Down, and Stops Moving Approximately 20 Minutes
14            Later; His Body is Found by Officer Vella at
              Approximately 2:40 a.m. .................................................................... 12

15
        E.    The Cause of Dunlevy's Death is Determined to be a Drug
16            Overdose From a Massive Infusion of Cocaine, Which
              Came from a Drug Bindle in Dunlevy's Stomach............................... 14

17   III.   PROCEDURAL POSTURE. ......................................................................... 17

18   IV.   STANDARD OF REVIEW. .......................................................................... 17

19   V.    ARGUMENT. ............................................................................................... 18

20        A.    Plaintiffs' First Claim for "Wrongful Death" Fails. ........................... 18

21            1.    Excessive Force. ...................................................................... 19

22            2.    Lack of Medical Care. .............................................................. 20

23                  a.    No subjective knowledge of a serious medical
24                    need. .............................................................................. 21

25                  b.    No causation. ................................................................. 24

26        B.    Plaintiffs' Second Claim for "Survivor Action" Fails For
              Multiple Reasons. .............................................................................. 25

27            1.    Plaintiffs do not assert any damages that are
28                 recoverable under a "survivorship" theory................................ 26

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1

**Page**

2             2.    The amount of force applied by the officers in
                      arresting Dunlevy was reasonable as a matter of

3                      law...........................................................................................................27

4        C.    Plaintiffs' Third and Fourth Claims Fail With the Others.................28

5  VI.    CONCLUSION. ...........................................................................................29

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-ii-
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Anderson v. Liberty Lobby, Inc.*,

5

   477 U.S. 242 (1986) ................................................................................. 17, 18

6

*Arnold v. IBM Corp.*,

7

   637 F.2d 1350 (C.D. Cal. 1981) .......................................................................... 19

8

*Arpin v. Santa Clara Valley Transp. Agency*,

9

   261 F.3d 912 (9th Cir. 2001) ............................................................................... 18

10

*Baker v. McCollan*,

   443 U.S. 137 (1979) ............................................................................................ 18

11

*Carnell v. Grimm*,

12

   74 F.3d 977 (9th Cir. 1996) ................................................................................. 20

13

*Celotex Corp. v. Catrett*,

14

   477 U.S. 317 (1986) ............................................................................................ 18

15

*City of Los Angeles v. Heller*,

16

   475 U.S. 796 ........................................................................................................ 28

17

*Dean v. City of Fresno*,

18

   546 F. Supp. 2d 798 (E.D. Cal. 2008) ......................................................... 22, 23

19

*Draper v. Reynolds*,

20

   369 F.3d 1270 (11th Cir. 2004) ........................................................................... 28

21

*Estelle v. Gamble*,

   429 U.S. 97 (1976) ........................................................................................ 20, 21

22

*Farmer v. Brennan*,

23

   511 U.S. 825 (1994) ...................................................................................... 20, 21

24

*Forrester v. City of San Diego*,

25

   25 F.3d 804 (9th Cir. 1994) ................................................................................. 28

26

*Frost v. Agnos*,

27

   152 F.3d 1124 (9th Cir. 1998) ....................................................................... 20, 21

28

**Rutan & Tucker, LLP**
*attorneys at law*

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

**Page(s)**

*Garcia v. Santa Clara County,*
  2004 U.S. Dist. LEXIS 20391 (N.D. Cal.) ................................................. 21, 29

*Graham v. Connor,*
  490 U.S. 386 (1989) ...................................................................... 19, 27

*Guyton v. Phillips,*
  532 F.Supp. 1154 (N.D. Cal. 1981)............................................................ 26

*Headwaters Forest Defense v. Burton,*
  240 F.3d 1185 (9th Cir. 2001)............................................................... 27

*Hodgers-Durgin v. De La Vina,*
  199 F.3d 1037 (9th Cir. 1999)............................................................... 25

*Hunter v. Young,*
  238 Fed.Appx. 336 (10th Cir. 2007) ........................................................ 28

*Intel Corp. v. Hartford Accident & Indem. Co.,*
  952 F.2d 1551 (9th Cir. 1991).............................................................. 18

*Katz v. United States,*
  194 F.3d 962 (9th Cir. 1999).......................................................... 24, 28

*Kelson v. City of Springfield,*
  767 F.2d 651 (9th Cir. 1985).............................................................. 18

*Larez v. City of Los Angeles,*
  946 F.2d 630 (9th Cir. 1991)........................................................ 1, 6, 17, 28

*Leer v. Murphy,*
  844 F.2d 628 (9th Cir. 1988)......................................................... 18, 21

*Long v. Idlet,*
  442 F.3d 1178 (9th Cir. 2006)............................................................. 28

*Martinez v. California,*
  444 U.S. 277 (1980) ...................................................................... 18

*Monell v. Dept. of Social Services,*
  436 U.S. 658 (1978) ................................................................... 17, 28

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page(s)**

*Robertson v. Wegmann,*
   436 U.S. 584 (1978) ................................................................. 25, 26

*Smith v. City of Fontana,*
   818 F.2d 1411 (9th Cir. 1987) .................................................... 25, 26

*Ward v. City of San Jose,*
   967 F.2d 280 (9th Cir. 1991) ........................................................... 18

*Watkins v. City of Battle Creek,*
   273 F.3d 682 (6th Cir. 2001) ................................................ 21, 22, 29

**STATE CASES**

*Garcia v. Superior Court,*
   42 Cal.App.4th 177 (1996) ............................................................. 26

*Pease v. Beech Aircraft Corp.,*
   38 Cal.App.3d 450 (1974) .............................................................. 26

*Stencel Aero Eng'g Corp. v. Superior Court,*
   56 Cal.App.3d 978 (1976) .............................................................. 26

**FEDERAL STATUTES**

42 U.S.C.
   section 1983 ....................................................................... Passim

**STATE STATUTES**

CODE OF CIVIL PROCEDURE
   section 377.30 ............................................................................ 25
   section 377.34 ............................................................................ 26

CAL. PEN. CODE
   section 647(f) ............................................................................. 10

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

**Page(s)**

CAL. PROB. CODE

section 6401 ................................................................................................... 25

section 6402 ................................................................................................... 25

**RULES**

FED. R. CIV. P. 56(c) ............................................................................................ 17

Local Rule 7-3 ........................................................................................................ 4

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ..................................................................................... 2, 19, 27

Fourteenth Amendment ....................................................................................... 2, 20

**OTHER AUTHORITIES**

California Government Claims Act, Cal. Gov. Code sections 810 *et seq.* ......... 5, 17

Rutan & Tucker, LLP

attorneys at law

972/053733-0513
950216.04 a09/09/08

-vi-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

## NOTICE OF MOTION FOR SUMMARY JUDGMENT OR
## ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 6, 2008 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 10-C of the United States District Court for the Central District of California, located at 411 W. Fourth Street, Santa Ana, California, Defendants CITY OF LAGUNA BEACH ("City"), LAGUNA BEACH POLICE CHIEF MICHAEL SELLERS, SERGEANT GUY MILLER, SERGEANT JENNY JONES, and OFFICER DUSTIN STAAL (collectively, "Defendants") will and hereby do move this Court for an order granting summary judgment in favor of Defendants, and against Plaintiffs TERRY R. DUNLEVY and KATHLEEN A. DUNLEVY ("Plaintiffs"), both in their individual capacities and as representatives of the estate of decedent Matthew Dunlevy ("Dunlevy"), on the following claims for relief, which constitute all of the claims for relief alleged by Plaintiffs in their operative First Amended Complaint ("FAC"), or alternatively for partial summary judgment of certain of the claims for relief listed below, as against some or all Defendants, per the Court's discretion:

1. Plaintiffs' First Claim for Relief for "Wrongful Death" Under 42 U.S.C. § 1983, Against All Defendants;

2. Plaintiffs' First Claim for Relief for "Survivor Action" Under 42 U.S.C. § 1983, Against All Defendants;

3. Plaintiffs' Third Claim for Relief for "Failure to Supervise (*Larez*)" Under 42 U.S.C. § 1983, Against All Defendants; and

4. Plaintiffs' Fourth Claim for Relief for "Municipal Custom, Policy, Practice (*Monnell*)" Under 42 U.S.C. § 1983, Against the City.

In addition to seeking summary judgment on all or some of Plaintiffs' claims for relief, Defendants also seek summary adjudication of the following separate issues raised by Plaintiffs' FAC:

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

1.  That Defendants, and each of them, are not liable under Plaintiffs' federal "Wrongful Death" claim based on a theory that "excessive force" was applied to Dunlevy under the Fourth Amendment.

2.  That Defendants, and each of them, are not liable under Plaintiffs' federal "Wrongful Death" claim based on a theory that Defendants failed to provide adequate medical care to Dunlevy under the Fourteenth Amendment.

3.  That Defendants, and each of them, are not liable under Plaintiffs' federal "Survival Action" claim based on a theory that "excessive force" was applied to Dunlevy under the Fourth Amendment.

4.  That Defendants, and each of them, are not liable under Plaintiffs' federal "Survival Action" claim based on a theory that Defendants failed to provide adequate medical care to Dunlevy under the Fourteenth Amendment.

This motion is made upon the ground that there are no triable issues of material fact as to the summary adjudication of the above issues and/or claims for relief. As set forth in the accompanying Memorandum of Points and Authorities, Defendants are entitled to this determination, and to the relief that flows therefrom, for the following reasons:

(1) On the "Wrongful Death" claim, the undisputed facts demonstrate that the cause of Dunlevy's death was a sudden and massive overdose of cocaine originating from a bindle in Dunlevy's stomach, and that Dunlevy did not die from either (1) the allegedly "excessive force" applied by the officers during his arrest, or (2) any failure of the Laguna Beach Police Department ("LBPD") to obtain medical treatment for Dunlevy. As to these specific theories, the following facts control:

(a) With respect to "excessive force," it is undisputed that whatever force was applied to Dunlevy during his arrest did not cause Dunlevy's death. The

Rutan & Tucker, LLP
attorneys at law
972/053733-0513
950216.04 a09/09/08

1   undisputed evidence shows that (1) the pathologist who performed the
2   autopsy on Dunlevy found that physical force did not cause Dunlevy's
3   death, and that Dunlevy had only "superficial" injuries that were
4   consistent with his being wrestled to the ground (*i.e.*, not "severely
5   beaten"); and (2) for a long time after his arrest, Dunlevy was active in his
6   cell (even exercising), and showed no signs whatsoever of having been
7   "beaten to death."

8   (b) With respect to "medical care," Plaintiffs cannot meet the applicable
9   standard of deliberate indifference, for the facts show that none of the
10   LBPD officers had any "actual knowledge" that Dunlevy had a "serious
11   medical need"—including no knowledge that he had swallowed a deadly
12   cocaine bindle.  At the very least, the individual officers are entitled to
13   qualified immunity under these facts.  Moreover, it is undisputed that the
14   LBPD officers would have had only minutes between the time the cocaine
15   bindle opened in Dunlevy's stomach and the time Dunlevy died.  As such,
16   there was nothing the officers could have done to prevent Dunlevy's
17   death, even had they known of the existence of the bindle.

18   (2) On the "Survivor Action" claim, Plaintiffs' claim fails because they assert no
19   damages that are recoverable under such a theory.  Where the allegedly
20   unconstitutional conduct of the defendants did not cause the decedent's death,
21   the only damages recoverable under a federal survivorship theory are
22   "economic damages" suffered by the decedent prior to death, consistent with
23   California law.  Because Plaintiffs have claimed no such damages here, they
24   have no viable claim for survivorship.  In any event, it is also clear from the
25   undisputed facts that the level of force applied by the officers in arresting
26   Dunlevy was reasonable.  At the very least, the individual officers are entitled
27   to qualified  immunity on that issue.

28   (3) On the "Failure to Supervise" and the "Municipal Custom, Policy, and

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-3-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  Practice" claims, because none of the individual officer defendants can be

2  found liable for constitutional violations for the reasons set forth above, then

3  no municipal or supervisory liability can attach.

4  This motion is based on this Notice of Motion and Motion, on the

5  Memorandum of Points and Authorities attached hereto, on the accompanying

6  Compendium of Supporting Evidence filed herewith, including the exhibits attached

7  thereto and the declarations of Guy Miller, Dustin Staal, Jenny Jones, Michael

8  Sellers, Nicholas Vella, Dylan Metzler, Kim McSorley, Larry Wohrman, Mark J.

9  Austin, Charles V. Wetli, M.D., and Jeffrey D. Ho, M.D., also attached thereto, and

10  on such other oral or documentary evidence that may be submitted at or before the

11  hearing on this motion.

12  This motion is made following the conference of counsel pursuant to Local

13  Rule 7-3, which took place on August 15, 2008.

14

15  Dated:  September 9, 2008                    RUTAN & TUCKER, LLP
                                               PHILIP D. KOHN
16                                             MARK J. AUSTIN
                                               GLEN WORTHINGTON
17

18                                        By: _____

19                                             Mark J. Austin
                                               Attorneys for Defendants CITY OF
20                                             LAGUNA BEACH, CHIEF
                                               MICHAEL SELLERS, SERGEANT
21                                             GUY MILLER, SERGEANT JENNY
                                               JONES, and OFFICER DUSTIN
22                                             STAAL

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-4-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1           **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**     **INTRODUCTION AND SUMMARY OF ARGUMENTS**.

3        This case involves the death of Matthew Dunlevy ("Dunlevy"), a 25-year old

4 male who died in a temporary holding cell at the Laguna Beach Police Department

5 ("LBPD") after being arrested only hours prior for public intoxication.  The

6 undisputed cause of Dunlevy's death—as determined by the pathologist who

7 performed the autopsy for the Orange County Sheriff-Coroner's Office, and

8 confirmed by experts retained by Defendants—was a drug overdose caused by a

9 sudden and massive infusion of cocaine.  In addition to the forensic tests revealing a

10 fatal amount of cocaine in Dunlevy's system (along with alcohol, which made the

11 effects of the cocaine even worse), the autopsy revealed an ***empty cellophane bindle***

12 in Dunlevy's stomach, along with 250 milligrams of cocaine—leading to the

13 conclusion that Dunlevy swallowed the cocaine bindle before his arrest, and it broke

14 open while Dunlevy was in custody, ***killing him "within minutes."***  The videotape

15 of Dunlevy in his holding cell (produced herewith) shows Dunlevy being active in

16 his cell (even exercising) for a couple of hours, then lying down, then ceasing to

17 move within 17 minutes of lying down.  Because of the speed with which the

18 cocaine bindle in Dunlevy's stomach killed him, and the fact that it could not have

19 been detected through any form of medical screening, there is nothing within the

20 realm of reason that Defendants could have done to prevent his death.

21        The plaintiffs in this case are Dunlevy's parents, Terry and Kathleen Dunlevy

22 ("Plaintiffs").  On April 6, 2007, Plaintiffs filed this case against the City of Laguna

23 Beach ("City"), LBPD Chief Michael Sellers, and the three LBPD officers involved

24 in Dunlevy's arrest—Sergeant Guy Miller, Sergeant Jenny Jones, and Officer Dustin

25 Staal (collectively, "Defendants").  Although Plaintiffs' initial complaint contained

26 both federal and state-law claims for relief, Plaintiffs removed the state-law claims

27 from their First Amended Complaint ("FAC") because they failed to file this action

28 within the time required by the California Government Claims Act, Cal. Gov. Code

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-5-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  §§ 810 *et seq.*  As such, the FAC contains only federal claims under 42 U.S.C. §
2  1983.

3      The FAC raises two basic theories against Defendants: (1) that Defendants
4  used "excessive force" against Dunlevy during his arrest, and (2) that Defendants
5  failed to summon medical help for Dunlevy after he was arrested.  Based on these
6  theories, Plaintiffs allege four claims for relief: (1) "Wrongful Death," (2) "Survivor
7  Action," (3) "Failure to Supervise (*Larez*)," and (4) "Municipal Custom, Policy,
8  Practice (*Monnell*)."  For the reasons demonstrated below, Plaintiffs cannot prevail
9  on any of their claims for relief, as follows:

10  (1) On the "Wrongful Death" claim, the undisputed facts demonstrate that the
11      cause of Dunlevy's death was a sudden and massive overdose of cocaine
12      originating from a bindle in Dunlevy's stomach, and that Dunlevy did not die
13      from either (1) the allegedly "excessive force" applied by the officers during
14      his arrest, or (2) any failure of the LBPD to obtain medical treatment for
15      Dunlevy.  As to these specific theories, the following facts control:

16      (b) With respect to "excessive force," regardless of any dispute regarding the
17          level of force applied to Dunlevy during his arrest—whether it included
18          the use of a TASER and a physical struggle (which Defendants admit), or
19          an alleged "beating" (which Defendants deny)—*it is nevertheless*
20          *undisputed that this force did not cause Dunlevy's death*.  The
21          undisputed evidence shows that (1) the pathologist who performed the
22          autopsy on Dunlevy found that physical force did not cause Dunlevy's
23          death, and that Dunlevy had only "superficial" injuries that were
24          consistent with his being wrestled to the ground (*i.e.*, not "severely
25          beaten"); and (2) for a long time after his arrest, Dunlevy was active in his
26          cell (even exercising), and showed no signs whatsoever of having been
27          "beaten to death."

28      (b) With respect to "medical care," Plaintiffs cannot meet the applicable

-6-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1    standard of ***deliberate indifference***, for the facts show that none of the
2    LBPD officers had any "actual knowledge" that Dunlevy had a "serious
3    medical need"—including no knowledge that he had swallowed a deadly
4    cocaine bindle.  At the very least, the individual officers are entitled to
5    qualified immunity under these facts.  Moreover, it is undisputed that the
6    LBPD officers would have had only ***minutes*** between the time the cocaine
7    bindle opened in Dunlevy's stomach and the time Dunlevy died.  As such,
8    there was nothing the officers could have done to prevent Dunlevy's death,
9    even had they known of the existence of the bindle.

10   (2) On the "Survivor Action" claim, Plaintiffs' claim fails because they assert no
11   damages that are recoverable under such a theory.  Where the allegedly
12   unconstitutional conduct of the defendants did not cause the decedent's death,
13   the only damages recoverable under a federal survivorship theory are
14   "economic damages" suffered by the decedent prior to death, consistent with
15   California law.  Because Plaintiffs have claimed no such damages here, they
16   have no viable claim for survivorship.  In any event, it is also clear from the
17   undisputed facts ***that the level of force applied by the officers in arresting***
18   ***Dunlevy was reasonable***.  At the very least, the individual officers are
19   entitled to qualified  immunity on that issue.

20   (3) On the "Failure to Supervise" and the "Municipal Custom, Policy, and
21   Practice" claims, because none of the individual officer defendants can be
22   found liable for constitutional violations for the reasons set forth above, then
23   no municipal or supervisory liability can attach.

24   For each of these reasons, Defendants respectfully request that this Court
25   grant Defendants' Motion—finding that there are no disputed issues of material fact
26   on some or all of Plaintiffs' four claims for relief, with respect to some or all
27   Defendants—and that the Court enter judgment in Defendants' favor accordingly.
28   \ \ \

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-7-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  **II.     STATEMENT OF FACTS.**

2          **A.      In Response to a Call, LBPD Officers Find and Apprehend**

3                  **Dunlevy at the White House Restaurant and Bar in Laguna Beach.**

4          On January 5, 2006, at shortly before 10:00 p.m., Sergeant Guy Miller

5  ("Miller") of the LBPD received a call from the manager of the White House

6  Restaurant and Bar ("White House") on Pacific Coast Highway, informing him that

7  a white male was in the women's restroom performing exercises and would not

8  leave.  In response to this call, Miller broadcast over his radio that he was

9  responding to the White House and requested additional units.  Declaration of

10  Sergeant Guy Miller ("Miller Decl.") ¶ 3.  Sergeant Jenny Jones ("Jones") and

11  Officer Dustin Staal ("Staal") responded.  Declaration of Sergeant Jenny Jones

12  ("Jones Decl.") ¶¶ 3-4; Declaration of Officer Dustin Staal ("Staal Decl.") ¶¶ 3-4.

13         Miller was the first officer to arrive at the scene, parking behind the bar and

14  entering through the rear door.  Miller Decl. ¶ 4.  Upon his arrival, Miller was

15  directed to the women's restroom, where he found Dunlevy standing at the sink

16  fumbling with some papers and his wallet.  *Id.*  Miller asked Dunlevy what he was

17  doing, to which Dunlevy responded, "You are not taking me to jail."  Miller

18  attempted to speak with Dunlevy further, but Dunlevy's responses were largely

19  unintelligible.  Miller could smell the odor of alcohol on Dunlevy's person, and

20  noted that his eyes were watery and red, leading Miller to the conclusion that

21  Dunlevy was intoxicated.  Miller Decl. ¶ 4.

22         Miller asked Dunlevy to leave the women's restroom multiple times, to which

23  Dunlevy made no intelligible response.  As a result, Miller placed Dunlevy in a rear

24  wrist hold and led him from the women's restroom, guiding him across the dance

25  floor of the restaurant toward the rear door from which Miller had entered.  Dunlevy

26  at first mildly resisted these efforts, but the resistance was not enough to interfere

27  with Miller's efforts.  *Id.* at ¶ 5.

28         As Miller crossed the dance floor with Dunlevy, Staal entered the restaurant

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-8-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   through the rear door.  At that point, Dunlevy immediately repeated, "You are not
2   taking me to jail," and his resistance increased dramatically.  He pulled away from
3   Miller, requiring Staal to grab Dunlevy.  As Staal did so, Dunlevy resisted further,
4   causing Staal and Dunlevy to bump into a set of speakers, nearly knocking the
5   speakers over.  Ultimately, Staal was able to control Dunlevy, and he resumed the
6   escort to the rear exit, with Miller behind.  *Id.* at ¶ 6; Staal Decl. ¶ 4.

7         **B.**     **As Dunlevy is Removed from the White House, He Resists,**
8               **Resulting in a Brief Struggle to Handcuff and Restrain Him; He is**
9               **Arrested for Public Intoxication.**

10         After Dunlevy, Staal, and Miller exited the rear of the restaurant and began to
11   walk towards the nearby police vehicles, Jones approached, having arrived moments
12   before.  At about that point, Dunlevy placed his left hand in his pocket and began
13   resisting vigorously, repeating that he was "not going to jail."  Each of the officers
14   then commanded Dunlevy to remove his hand from his pocket, but Dunlevy did not
15   comply.  Miller Decl. ¶ 7; Staal Decl. ¶ 5; Jones Decl. ¶ 4.

16         For several moments, the officers attempted to force Dunlevy to remove his
17   hand from his pocket, but Dunlevy continued to resist.  After some time, Miller
18   stated that Dunlevy should be taken to the ground, which he accomplished by
19   performing a leg sweep.  The struggle then moved to the ground, with Dunlevy
20   lying on his stomach and the officers continuing to attempt to remove Dunlevy's
21   hand from his pocket.  Miller Decl. ¶ 8; Staal Decl. ¶ 6; Jones Decl. ¶ 5.

22         When these additional efforts proved unsuccessful, Miller drew his TASER
23   from its holster and applied it to Dunlevy's right lower-back for 3-5 seconds, one or
24   two times, in the "touch stun" mode (*i.e.*, without the darts).  As he did so, the
25   officers were ultimately able to remove Dunlevy's left hand from his pocket.  Even
26   after Dunlevy's hand was free, however, the officers were still not able to force his
27   arms together to be handcuffed.  As result, the officers placed one pair of handcuffs
28   on Dunlevy's left wrist, and another set on Dunlevy's right wrist, then linked the

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-9-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1 handcuffs together. Miller Decl. ¶ 9; Staal Decl. ¶ 7; Jones Decl. ¶ 6.

2    After his hands were restrained, Dunlevy continued to flail about, kick his
3 feet, and yell, kicking Staal in the leg at one point. As a result, Miller obtained a
4 "hobble" restraint from Staal's car and, with Staal's assistance, attached one end of
5 the hobble to Dunlevy's waist belt and the other end around his feet, leaving enough
6 slack so that Dunlevy could stand. At that point, Dunlevy ceased resisting, and
7 Miller was able to help Dunlevy to his feet. Miller then asked Dunlevy if he was
8 injured, to which Dunlevy responded by asking why he was being arrested. Miller
9 responded that he was being arrested for public intoxication. CAL. PEN. CODE §
10 647(f).[1] At no time whatsoever did any of the officers punch, kick, or beat Dunlevy
11 in any way. Miller Decl. ¶ 10; Staal Decl. ¶ 8; Jones Decl. ¶ 7.

12    Following this exchange, the officers walked Dunlevy to Staal's vehicle and
13 placed him in the rear passenger seat. Staal then transported Dunlevy to the LBPD
14 jail facility (the "Jail"), located very near the White House, with officers Miller and
15 Jones following. Miller Decl. ¶ 12; Staal Decl. ¶ 10; Jones Decl. ¶ 9.

16    **C.    Dunlevy is Placed in a Holding Cell at the Jail; The Arresting**
17        **Officers Then Leave the Facility and Continue Their Patrols.**

18    Within a minute or so, the three arresting officers arrived at the Jail with
19 Dunlevy. Once there, they brought Dunlevy to the first cell in the facility, known as
20 the "detoxification cell" or "sobering cell." The detoxification cell is a 12-foot by
21 8.5-foot cement cell with a single metal door containing an observation window
22 towards the top. On the wall across from the door is a stainless steel toilet and sink,
23 with a stainless steel rail next to it. The cell contains no bed, but does contain a

24 ─────────────
[1]    All of the officers noticed that Dunlevy exhibited a number of signs of
25 intoxication, including the odor of alcohol on his person, red and water eyes, slurred
speech, and unwillingness to cooperate. Miller Decl. ¶ 11; Staal Decl. ¶ 9; Jones
26 Decl. ¶ 8. In addition, Miller had further witnessed Dunlevy's confused and
disoriented state that caused him to enter the women's restroom. Miller Decl. ¶ 11.
27 As such, Miller and the other officers concluded that Dunlevy was too intoxicated to
care for his own safety, that he represented a danger to himself and potentially
28 others, and that he should therefore be arrested for public intoxication. (Miller Decl.
¶ 11; Staal Decl. ¶ 9; Jones Decl. ¶ 8.

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   blanket. ***An observation camera is mounted in one corner near the ceiling, which***

2   ***continuously feeds footage to the nearby dispatchers' room***, which is staffed at all

3   times with at least two dispatchers per LBPD policy.  Miller Decl. ¶ 13; Staal Decl.

4   ¶ 11; Jones Decl. ¶ 10; Declaration of Dylan Metzler ("Metzler Decl.") ¶ 4;

5   Declaration of Larry Wohrman ("Wohrman Decl.") ¶ 3.

6        The three arresting officers were joined at the Jail by Officer Nicholas Vella

7   ("Vella"), and by the Civilian Booking Officer, Dylan Metzler ("Metzler"), both of

8   whom accompanied the three arresting officers and Dunlevy into the detoxification

9   cell.  Once there, the officers collectively undertook the process of removing

10  Dunlevy's restraints, searching him, and removing his extraneous belongings.

11  Miller Decl. ¶ 14; Staal Decl. ¶ 12; Jones Decl. ¶ 11; Declaration of Nicolas Vella

12  ("Vella Decl.") ¶ 5; Metzler Decl. ¶ 5; *see also* Jail Video (Def.'s Exh. T)[2];

13  Declaration of Mark J. Austin ("Austin Decl."), ¶¶ 21, 25.

14       During this process, ***Miller and Jones each asked Dunlevy whether he had***

15  ***any medical problems of which they should be aware, and Dunlevy responded that***

16  ***he did not.  In addition, both Miller and Jones also asked Dunlevy whether he had***

17  ***taken any drugs other than alcohol, or "anything that we [the officers] should be***

18  ***concerned about."***  In response to Jones, Dunlevy stated, "No, no.  I'm okay, I'm

19  ────────────

20  [2]   The video of Dunlevy in the detoxification cell has been produced herewith, on
    DVD, as the City's Exhibit T.  Unfortunately, the DVD version of this video does
21  not contain the "time stamp" showing the date and time of the video, because it did
    not carry over when the footage was copied (by the Orange County District
    Attorney's Office ("OCDA")) from the original VHS tape to DVD.  Austin Decl. ¶¶
22  21-25; Wohrman Decl. ¶ 6.  However, the original VHS version of the video, which
    was recently returned to the LBPD from the OCDA, *does* contain the time stamp.
23  Austin Decl. ¶¶ 21-25; Wohrman Decl. ¶¶ 6, 8.  In light of that fact, accompanying
    this Motion is a declaration of attorney Mark J. Austin, who recently viewed the
24  videotape on the appropriate machinery, describing how the time stamp coincides
    with the events depicted on the tape.  Austin Decl. at ¶ 25.
25     In addition, the accompanying declaration of Larry Wohrman further explains
    certain technical details regarding the video, such as the fact that the cameras used a
26  ***"time lapse"*** recording method, which causes the picture to be "jerky," and also
    causes the length of the DVD video (which was also copied at a fast speed) to be
27  much shorter than the length of time that Dunlevy actually spent in the cell.
    Wohrman Decl. ¶¶ 4-7; Austin Decl. ¶ 24.  If necessary, the City can provide the
28  original videotape, along with the necessary viewing equipment, so that the original
    tape can be viewed by the Court and/or counsel.

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

1  okay."  In response to Miller, he stated that he had taken "200 milligrams of vitamin
2  C and that's all."  Miller Decl. ¶ 15; Jones Decl. ¶ 12; Vella Decl. ¶ 6.

3      After Dunlevy was searched and questioned, at shortly after 10:00 p.m., he
4  was left in the detoxification cell alone.  Jail Video; Austin Decl. ¶ 25; Miller Decl.
5  ¶ 16; Staal Decl. ¶ 13; Jones Decl. ¶ 13; Vella Decl. ¶ 7; Metzler Decl. ¶ 6.  Shortly
6  thereafter, Miller, Jones, and Staal—*the only individual defendants other than*
7  *Chief Sellers*—left the Jail (and the Police Station, which is part of the same
8  building) to resume their patrols, which is where they spent the majority of the
9  remainder of their shifts.  Miller Decl. ¶ 16; Staal Decl. ¶ 13; Jones Decl. ¶ 13.[3]
10 Staal did not return to the Jail facility *at all* prior to Dunlevy's body being found at
11 approximately 2:40 a.m.  Staal Decl. ¶ 13.  Meanwhile, Miller and Jones
12 occasionally returned to the Jail at separate times for short periods, to book prisoners
13 or perform other functions that had nothing to do with Dunlevy.  Miller Decl. ¶ 16;
14 Jones Decl. ¶ 13.  Critically, *neither Miller, Jones, nor Staal had any further*
15 *dealings with Dunlevy whatsoever prior to his body being found at approximately*
16 *2:40 a.m.*  Miller Decl. ¶¶ 17-18; Staal Decl. ¶¶ 14-15; Jones Decl. ¶¶ 14-15.[4]

17        **D.    After Being Active In His Cell for Two Hours, Dunlevy Lays Down,**
18              **and Stops Moving Approximately 20 Minutes Later;  His Body is**
19              **Found by Officer Vella at Approximately 2:40 a.m.**

20        After Dunlevy was left alone in his detoxification cell, for the next
21 approximately two hours (until shortly after midnight), he was very active, walking
22 around, performing various exercises, and occasionally approaching the cell door.
23 Jail Video; Austin Decl. ¶ 25; *see also* Metzler Decl. ¶ 6.

24        Shortly after midnight (at 12:09 a.m.), Dunlevy laid down in his cell near the
25 door.  For the next *ten minutes*, he moved his arms and legs in a random pattern.

26 _____
[3]   Officer Vella also left the Jail facility and Police Station to resume his patrol
27 after Dunlevy was left in the detoxification cell.  Vella Decl. ¶¶ 7, 10.
[4]   The only other individual defendant officer, Police Chief Michael Sellers, had no
28 contact with Dunlevy whatsoever during the incident in this case, *because he was*
*off duty the entire time*.  Declaration of Chief Michael Sellers ("Sellers Decl.") ¶ 3.

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  Then, ***once a minute for four minutes***, he jerked his arms and legs up.  His body
2  then moved very slightly a couple times ***before ceasing to move altogether at 12:26***
3  ***a.m.***  Jail Video; Austin Decl. ¶ 25.

4          While Dunlevy was in the cell, he was under consistent video surveillance by
5  the two dispatchers in the nearby dispatch office.  Miller Decl. ¶ 13; Staal Decl. ¶
6  11; Jones Decl. ¶ 10; Metzler Decl. ¶ 4; Wohrman Decl. ¶ 3.  In addition, periodic
7  cell checks (whereby an officer would check on Dunlevy through the window in his
8  cell door) were performed by the following officers at the following times:

9    • Metzler checked Dunlevy at every half-hour mark beginning at approximately
10       10:40 p.m. and ending at about 12:30 a.m.  At the time of his last check,
11       Dunlevy did not appear to be exhibiting any symptoms such as seizures, and
12       seemed to be snoring.[5]  Metzler Decl. ¶ 6.

13   • Officer Kim McSorley ("McSorley") looked-in on Dunlevy at 1:30 a.m.,
14       while temporarily in the Jail to book a prisoner.  She believed him to be
15       asleep.  Declaration of Kim McSorley ¶ 4.

16   • Vella performed a check on Dunlevy at 2:40 a.m., while temporarily in the
17       Jail to book a prisoner.  At the time of this check, Vella noticed that Dunlevy
18       was not moving, that his eyes and mouth were open, and that his skin color
19       appeared grey.  Vella Decl. ¶ 8.

20          When Vella discovered Dunlevy in this condition at 2:40 a.m., he
21  immediately entered the detoxification cell and tried to revive Dunlevy by rubbing
22  his chest.  When this failed to elicit a response, he made two calls on his handheld
23  radio—the first requesting "medical aid in the jail," and the second stating that he
24  had a "non-responsive male" in the jail.  He then commenced performing chest
25  compressions on Dunlevy.  *Id.* at ¶ 8; Jail Video; Austin Decl. ¶ 25.

26

27  _____
[5]  After his last check at 12:30 a.m., Metzler finished his shift early and left the Jail
     because he had a class early the next morning.  Metzler had cleared this schedule
28  with his supervisors beforehand.  In addition, at the time he left, he radioed "10-7,"
     indicating that he was leaving his shift.  Metzler Decl. ¶ 8.

-13-

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1    Within moments, Miller arrived in the cell in response to Vella's calls, having
2    been at the Jail facility at the time. When Miller arrived, he and Vella jointly
3    performed CPR on Dunlevy. After a couple of minutes of this activity, paramedics
4    arrived in the cell and took over. When their attempts to revive Dunlevy failed, the
5    paramedics pronounced Dunlevy dead. Miller Decl. ¶ 17; Vella Decl. ¶ 8; Jail
6    Video; Austin Decl. ¶ 25.

7    **E.    The Cause of Dunlevy's Death is Determined to be a Drug**
8    **Overdose From a Massive Infusion of Cocaine, Which Came from**
9    **a Drug Bindle in Dunlevy's Stomach.**

10    Dr. Anthony Juguilon, a forensic pathologist of the Orange County Sheriff-
11    Coroner's Office ("Coroner's Office"), was assigned the task of determining the
12    cause of Dunlevy's death. Deposition of Dr. Anthony Juguilon ("Juguilon Depo.")
13    11:19 – 13:7, 29:10 – 31:14 (Def.'s Exh. A); Autopsy Report (Def.'s Exh. H). On
14    the morning of January 6, 2006, Dr. Juguilon performed an autopsy, consisting of an
15    external and internal examination of Dunlevy's body and related tests. Juguilon
16    Depo. 29:10 – 31:14, 33:25 – 36:16, 36:25 – 37:14, 43:5 – 44:24; Autopsy Report;
17    Histology Report (Def.'s Exh. I).

18    The autopsy did not reveal a cause of death. Juguilon Depo. 36:17-24, 44:1 –
19    46:8. However, during the autopsy, Dr. Juguilon found an *empty cellophane bindle*
20    in Dunlevy's stomach, with a hole in it, which led him to suspect that Dunlevy died
21    from a drug overdose relating to that bindle. Autopsy Report, p. 7 (Def.'s Exh. H).
22    In Dr. Juguilon's experience, such bindles serve only one purpose—to hold drugs.
23    Juguilon Depo. 59:14 – 62:6, 82:11 – 83:15;

24    Although the autopsy did not reveal a cause of death, Dr. Juguilon was
25    nevertheless certain from the autopsy that Dunlevy *did not die from any form of*
26    *physical trauma*, including from being beaten or from the use of a TASER.
27    Juguilon Depo. 37:15 – 38:11, 42:10-12, 96:22 – 98:13, 98:21 - 23; 101:10-21.
28    According to Dr. Juguilon, such physical trauma would have been revealed by the

Rutan & Tucker, LLP
attorneys at law

-14-

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   autopsy. *Id.* at 38:6-8, 45:6-22.  In fact, he found all of the injuries on Dunlevy's
2   body to be merely "superficial" (*i.e.*, confined to the skin and superficial tissues),
3   and that his body had no signs whatsoever of having been "severely" beaten.  *Id.* at
4   38:12 – 42:25; Autopsy Report.  According to Dr. Juguilon, Dunlevy's injuries were
5   consistent with Dunlevy having been wrestled to the ground in the process of trying
6   to handcuff him.  Juguilon Depo. 41:9-18.

7        Following the autopsy, toxicological tests were run by the Forensic Science
8   Services Division (the "Crime Lab") of the Coroner's Office.  Toxicological Report
9   (Def.'s Exh. J); Deposition of Ines Collison ("Collison Depo.") 32:24 – 34:15, 37:20
10  – 38:24, 51:12 – 52:11, 59:6 – 60:14, 98:6-8 (Def.'s Exh. B); Juguilon Depo. 49:10-
11  25, 52:19 – 53:10, 59:3-18, 64:12 – 65:5, 72:7-17, 102:23 – 103:5.  ***These tests***
12  ***revealed excessively high amounts of cocaine in Dunlevy's brain and blood, as***
13  ***well as a very high amount of alcohol in his blood***.  Toxicological Report; Collison
14  Depo. 61:11 – 64:15, 77:19 – 79:5, 86:16 – 87:17, 95:4 – 96:12; Juguilon Depo.
15  72:7 – 78:14; Deposition of Teresa Baise ("Baise Depo.") 28:15 – 29:12, 30:5-33:1,
16  45:22 – 46:24 (Def.'s Exh. C); Deposition of Qui Dang ("Dang Depo.") 23:23 –
17  24:15, 25:17 – 29:10 (Def.'s Exh. D).  ***In addition, a toxicological examination of***
18  ***Dunlevy's stomach contents revealed the presence of approximately 250***
19  ***milligrams of cocaine***.  Toxicological Report; Collison Depo. 79:6-22; Juguilon
20  Depo. 61:22 – 62:3; Baise Depo. 32:17-22.

21       Based on these findings, Dr. Juguilon had "no doubt" that Dunlevy died from
22  "acute intoxication of cocaine and alcohol."  Autopsy Report (front page) (City's
23  Exh. H); Juguilon Depo. 29:10 – 31:1, 36:17-21, 70:22 – 71:5, 81:22 – 82:6.  The
24  levels of cocaine found in Dunlevy's system were absolutely and unequivocably
25  consistent with fatal levels—in fact, the level of cocaine found in Dunlevy's brain
26  was "off the charts," in that it was higher than the highest end of the "range of fatal
27  levels" to which Dr. Juguilon referred.  Juguilon Depo. 72:7 – 78:14, 78:19 –
28

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-15-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  81:21.[6]  The presence of alcohol in Dunlevy's system, according to Dr. Juguilon,
2  only made the effects of this cocaine more severe. *Id.* 77:2-25.

3       Based on the totality of the evidence—including the existence in Dunlevy's
4  stomach of the cellophane bindle and a large amount of cocaine—Dr. Juguilon
5  believed Dunlevy died because he swallowed a cocaine bindle at some point, which
6  later broke open in his stomach, quickly spilling a massive cocaine "bolus" into his
7  stomach and killing him. *Id.* at 59:14 – 62:6, 105:7 – 107:2, 113:20 – 114:4, 116:1
8  – 118:14, 122:18 – 123:9. According to Dr. Juguilon, once these massive levels of
9  cocaine reached Dunlevy's system, *he would have died "within minutes" of that*
10 *occurrence, and within minutes of showing any signs of an overdose, such as a*
11 *seizure.* *Id.* at 105:7 – 107:2, 146:15 – 147:4, 152:12 – 155:1, 160:16-19, 163:22 –
12 164:3. Moreover, Dr. Juguilon further testified what is also established by common
13 sense—*that no medical screen would have revealed the presence of Dunlevy's*
14 *fatal cocaine bindle inside his stomach.* *Id.* at 159:11-21.

15      In addition to Dr. Juguilon, expert witnesses retained by Defendants in this
16 case have reached identical conclusions—namely, (1) that Dunlevy died of a drug
17 overdose from a large amount of cocaine in his system; (2) that this massive amount
18 of cocaine would have killed Dunlevy within minutes of it entering his system, and
19 within minutes of him showing any signs of a drug overdose; and (3) that, absent
20 knowing about the presence of the cocaine bindle in Dunlevy's stomach before it
21 broke open, there was nothing the LBPD could have done to locate the bindle or
22 prevent or forestall his death. Declaration of Dr. Charles Wetli ("Wetli Decl."), ¶¶
23 5-8; Dr. Wetli's Expert Report, pp. 2-3 (Def.'s Exh. M); Declaration of Dr. Jeffrey
24 Ho ("Ho Decl."), ¶ 5; Dr. Ho's Expert Report, pp. 17-18 (Def.'s Exh. O).[7]

25
26 [6]   According to the source consulted by Dr. Juguilon regarding the known "fatal
levels" of cocaine in brain tissue, the higher end of this fatal range was 14 or 15
mg/kg. Dunlevy's level was even higher than that amount—18 mg/kg. Juguilon
27 Depo. 78:19 – 81:21; Toxicological Report (Def.'s Exh. J). The lethality of
Dunlevy's cocaine numbers was further confirmed by the forensic scientists at the
28 Crime Lab. Collison Depo. 95:4 – 96:12; Baise Depo. 45:22 – 46:24.
[7]   As a side note, sometime after the original toxicological report was completed,

Rutan & Tucker, LLP
attorneys at law
-16-
972/053733-0513
950216.04 a09/09/08
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  ## III.   **PROCEDURAL POSTURE.**

2      Plaintiffs filed this case on April 6, 2007.  As originally pled, the case

3  contained both federal and state-law claims for relief.  Original Complaint (Def.'s

4  Exh. R).  On August 31, 2007, Plaintiffs filed a First Amended Complaint ("FAC")

5  removing the state-law claims, and stating only federal claims under 42 U.S.C. §

6  1983 ("Section 1983").  FAC, pp. 9-13 (Def.'s Exh. S).[8]

7      The FAC alleges four claims for relief, each of which is said to be based on

8  Section 1983:  (1) "Wrongful Death" against all Defendants; (2) "Survival Action"

9  against all Defendants; (3) "Failure to Supervise (*Larez*)" against all Defendants;

10  and (4) "Municipal Custom, Policy, Practice (*Monell*)" against the City.  FAC, pp.

11  9-13.  These claims are based on two theories of liability:  (1) "excessive force"

12  during the arrest; and (2) a failure to provide medical care to Dunlevy while he was

13  in custody.  *Id.* at ¶¶ 13-36.

14  ## IV.   **STANDARD OF REVIEW.**

15      To grant a motion for summary judgment, a district court must find that

16  "there is no genuine issue as to any material fact and that the moving party is

17  entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue of fact is

18  "genuine" if the evidence is such that a reasonable jury could return a verdict for the

19  plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of

20  fact is "material" only if the establishment of the fact might affect the outcome of

21  the lawsuit under governing substantive law.  *Id.*

22  —————————

23  the Crime Lab discovered that one of the reagents used in the testing for cocaine
may have contained a contaminant that could have affected the results of Dunlevy's
tests.  *See* Amended Toxicological Report, pp. 1-2 (Def.'s Exh. K).  However, the

24  Crime Lab scientists stated that this contaminant would have created a margin of
error of only approximately *3-7%*, and that, even assuming a margin of error as high

25  as *10%*, it still did not affect the significance of the numbers in Dunlevy's tests.
Collison Depo. 88:16-22, 89:9 - 98:12; Baise Depo. 50:2 – 54:17.  The lack of

26  significance of this margin of error was further confirmed by Dr. Juguilon and by
Defendants' experts.  Juguilon Depo. 85:24 – 86:16, 91:14 – 94:13, 103:6-12,

27  122:4-17; Dr. Wetli's Expert Report, p. 2 (Def.'s Exh. M).
[8] The state-law claims were removed because Plaintiffs had failed to file this

28  action within the time required by the California Government Claims Act, Cal. Gov.
Code §§ 810 *et seq.*  Austin Decl. ¶ 20, n.1.

-17-

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1       "'[S]ummary judgment should be granted where the nonmoving party fails to
2 offer evidence from which a reasonable jury could return a verdict in its favor.'"
3 *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).
4 Production of a "scintilla of evidence" in support of an essential element will not
5 forestall summary judgment. *Anderson*, 477 U.S. at 252. Under this standard, "the
6 mere existence of some alleged factual dispute between the parties will not defeat an
7 otherwise properly supported motion for summary judgment." *Id.* at 247-48.

8       "If the moving party meets its initial burden of showing the absence of a
9 material and triable issue of fact, the burden then moves to the opposing party, who
10 must present significant probative evidence tending to support its claim or defense."
11 *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).
12 If the nonmoving party fails to make this showing, the moving party is entitled to a
13 judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

14 **V.**   **ARGUMENT.**

15       **A.**   **Plaintiffs' First Claim for "Wrongful Death" Fails.**

16       A parent has a "constitutionally protected liberty interest in the
17 companionship and society of his or her child." *Ward v. City of San Jose*, 967 F.2d
18 280, 283 (9th Cir. 1991); *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir.
19 1985). "The state's interference with that liberty interest without due process of law
20 is remediable under section 1983." *Id.* at p. 655.

21       Under this law, if the defendant's unconstitutional conduct was not the
22 ***proximate cause*** of the decedent's death—*i.e.*, if the conduct did not in fact
23 "interfere" with the parent's protected liberty interest—there can be no liability. *Id.*;
24 *Martinez v. California*, 444 U.S. 277, 284-85 (1980) (no recovery under Section
25 1983 unless alleged constitutional violation was proximate cause of injury); *Baker v.*
26 *McCollan*, 443 U.S. 137, 142 (1979) ("A public official is liable under § 1983 only
27 if he *causes* the plaintiff to be subjected to deprivation of his constitutional rights.")
28 (internal quotations omitted); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-18-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   1988); *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (C.D. Cal. 1981).

2       Plaintiffs' two substantive theories of wrongful-death liability—"excessive

3   force" and lack of adequate medical care—fail for the reasons discussed below.

4       **1.    Excessive Force.**

5       The amount of force used to effect an arrest is constitutional under the Fourth

6   Amendment if it is "objectively reasonable," considering such factors as the level of

7   force inflicted and whether the suspect is actively resisting arrest. *Graham v.*

8   *Connor*, 490 U.S. 386, 396-97 (1989). Although Defendants vigorously deny that

9   they used excessive force on Dunlevy (the Jail Video and the autopsy findings speak

10  for themselves), even assuming such force was applied[9], it nevertheless does not

11  give rise to a wrongful death claim because it indisputably did not cause Dunlevy's

12  death. This conclusion flows from the following undisputed facts:

13  • The cause of Dunlevy's death was "acute intoxication of cocaine and

14      alcohol." Juguilon Depo. 29:10 – 31:1, 36:17-21, 70:22 – 71:5, 72:7 – 78:14,

15      78:19 – 81:21, 81:22 – 82:6; Autopsy Report (front page) (Def.'s Exh. H);

16      Toxicological Report (Def.'s Exh. J); Wetli Decl. ¶¶ 5-8; Dr. Wetli's Expert

17      Report, pp. 2-3 (Def.'s Exh. M); Ho Decl. ¶ 5; Dr. Ho's Expert Report, pp.

18      17-18 (Def.'s Exh. O); Collison Depo. 61:11 – 64:15, 77:19 – 79:5, 86:16 –

19      87:17, 95:4 – 96:12; Baise Depo. 28:15 – 29:12, 30:5-33:1, 45:22 – 46:24;

20      Dang Depo. 23:23 – 24:15, 25:17 – 29:10.

21  • The high levels of cocaine in Dunlevy's system came from a sudden, massive

22      infusion, which stemmed from the unknown cocaine bindle in his stomach.

23      Juguilon Depo. 59:14 – 62:6, 105:7 – 107:2, 113:20 – 114:4, 116:1 – 118:14,

24      122:18 – 123:9, 146:15 – 147:4, 152:12 – 155:1, 160:16-19, 163:22 – 164:3;

25      Wetli Decl. ¶¶ 5-8; Dr. Wetli's Expert Report, pp. 2-3 (Def.'s Exh. M); Ho

26      Decl. ¶ 5; Dr. Ho's Expert Report, pp. 17-18 (Def.'s Exh. O); Toxicological

27  ───────────────
[9] As discussed below, Defendants further submit that under the undisputed facts,
28  this Court should find as a matter of law that the force applied by the officers was
reasonable.

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1    Report (Def.'s Exh. J); Collison Depo. 79:6-22; Baise Depo. 32:17-22.

2    • According to the Jail Video, Dunlevy showed no signs whatsoever of dying

3      from physical trauma applied during his arrest. He was very active for over

4      two hours, then laid down and died some time later. Jail Video; Austin Decl.

5      ¶ 25; Metzler Decl. ¶ 6.

6    • The autopsy revealed no evidence that Dunlevy died of any force applied to

7      him during his arrest. Juguilon Depo. 37:15 – 38:11, 42:10-12, 45:6-22,

8      96:22 – 98:13, 101:10-21; Autopsy Report; Ho Decl. ¶ 5; Dr. Ho's Expert

9      Report (Def.'s Exh. O). In fact, all of Dunlevy's wounds were "superficial,"

10     not consistent with any "severe" beating. Juguilon Depo. 38:12 – 42:25.

11    Based on these facts, it is beyond dispute that no amount of force inflicted on

12 Dunlevy by the LBPD caused Dunlevy's death. As such, Defendants seek summary

13 adjudication of Plaintiffs' wrongful death claim in Defendants' favor, to the extent

14 that claim is based on a theory of "excessive force."

15               **2.**    **Lack of Medical Care.**

16    Pretrial detainees have a constitutional right to a certain degree of medical

17 care under the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05

18 (1976); *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996); *see also Frost v. Agnos*,

19 152 F.3d 1124, 1128 (9th Cir. 1998). Government officials violate that right when

20 they are "deliberately indifferent" to a detainee's "serious medical needs." *Estelle*,

21 429 U.S. at 104-05; *Carnell*, 74 F.3d at 979; *see also Frost, supra*, 152 F.3d at 1128.

22    In order to qualify as "deliberately indifferent," an individual official must be

23 *subjectively aware* of the detainee's *serious medical needs*, and must choose to

24 ignore them. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official

25 must both be aware of facts from which the inference could be drawn that a

26 substantial risk of serious harm exists, *and he must also draw the inference*.")

27 (emphasis added); *Estelle*, 429 U.S. at pp. 104-05; *Carnell*, 74 F.3d at 979. Under

28 that standard, "an inadvertent failure to provide adequate medical care" to a detainee

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-20-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1 does not give rise to a constitutional violation. *Estelle*, 429 U.S. at 105-06. On the
2 contrary, "deliberate indifference entails something more than mere negligence."
3 *Farmer*, 511 U.S. 825, 835. The official's conduct must have been "wanton." *See*
4 *Frost*, *supra*, 152 F.3d at 1128.

5 Moreover, even where a constitutional violation has occurred, as noted above
6 there can be no Section 1983 recovery unless that violation ***proximately caused*** the
7 plaintiffs' injury—here, Dunlevy's death. *Leer*, 844 F.2d 628, 634 (plaintiff
8 alleging death caused by defendants' deliberate indifference must prove that
9 indifference was proximate cause of death); *Garcia v. Santa Clara County*, 2004
10 U.S. Dist. LEXIS 20391, \*25-27 (N.D. Cal.) (no Section 1983 liability for lack of
11 medical care where lack of care was not proximate cause of decedent's death,
12 ***because decedent died within minutes of being shot***).

13 Based on these rules, Defendants are entitled to summary judgment on the
14 "medical care/wrongful death" theory for the following two reasons.

15           a.   <u>No subjective knowledge of a serious medical need.</u>

16 First, none of the LBPD officers who interacted with Dunlevy had ***subjective***
17 ***knowledge*** that Dunlevy had a ***serious medical need***. As such, none of them can be
18 found to have been "deliberately indifferent" towards Dunlevy. On this issue, two
19 recent cases are on point.

20 In *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001), police
21 apprehended Watkins in his apartment. While there, they had several indications
22 that Watkins had swallowed crack cocaine, including (1) that a plastic bag and white
23 crumbs (later identified as crack cocaine) were found in the closet in which Watkins
24 was hiding, (2) that Watkins was frequently seen licking his lips, with "pink foamy
25 drool" coming out of his mouth, and (3) that Watkins had a "white speck" near his
26 mouth. In response, the officers asked Watkins if he had swallowed drugs, but
27 Watkins denied having done so, and explained the pink drool by claiming he had hit
28 his mouth during his arrest. *Watkins*, 273 F.3d at 684.

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-21-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1    Watkins was then brought to the jail, where he "complained of an upset
2  stomach and appeared to be drunk or high."  A few minutes later, he fell from a
3  chair to the floor, and was observed making some chewing motions with his mouth.
4  When Watkins stood to enter the intake area, he bent over as though he was going to
5  throw up, and later fell again before being taken to a cell.  In response, the officers
6  again asked him if he has swallowed drugs, and he again denied it and explained-
7  away his symptoms.  *Id.* at 684-85.

8    Watkins was then placed in an observation cell that had a "privacy wall."  At
9  that time, he again informed the officers that he "felt sick."  The officers then
10  checked on Watkins periodically.  About an hour-and-a-half later, during a routine
11  head count, Watkins was found behind the privacy wall in the cell not breathing and
12  with no pulse.  He was pronounced dead sometime later.  *Id.*

13    Based on these facts, the Sixth Circuit affirmed the district court's grant of
14  summary judgment in favor of the City of Battle Creek and its officers.  According
15  to the court, the applicable standard was "deliberate indifference to serious medical
16  needs."   Under that standard, the court held that it was not enough to create a
17  question of fact as to whether the officers "***should*** have known" that Watkins had
18  swallowed drugs.  Rather, the plaintiff had to create a question of fact as to whether
19  the officers ***actually knew*** that Watkins had swallowed drugs.  In light of Watkins'
20  repeated denials of that fact, the court held that no question of fact was created on
21  that point.  *Id.* at 686-87.

22    Similarly, in *Dean v. City of Fresno*, 546 F. Supp. 2d 798 (E.D. Cal.
23  2008) police arrested Dean, and found him to possess rock cocaine and an empty
24  prescription bottle with cocaine residue on it.  During his arrest, he vomited in the
25  police car, but explained that he was alright, and that he vomited because of a "bad
26  drink" (although the officers did not smell alcohol on him).  *Id.* at 801.  While being
27  booked, Dean suffered a seizure and was taken to a medical hospital, where he later
28  died from "[c]omplications of seizures following cocaine use."  *Id.* at 803.  In

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-22-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   response to a motion for summary judgment, the court held that these facts (up
2   through the time Dean vomited and shortly thereafter) were **not** sufficient to give
3   rise to a claim for inadequate medical care, because mere vomiting (even where
4   drugs are found on the person) does not indicate a "serious medical need,"
5   particularly when it is explained away by the detainee. *Id.* at 812-13.[10]

6        Under this law, none of the LBPD officers can be said to have had sufficient
7   knowledge of Dunlevy's needs to give rise to a finding of deliberate indifference.
8   Most importantly, ***none of the defendant officers were presented with any facts***
9   ***whatsoever that Dunlevy had swallowed a cocaine bindle***. Miller Decl. ¶ 18; Staal
10  Decl. ¶ 15; Jones Decl. ¶ 15; Sellers Decl. ¶ 3.[11] The absence of this knowledge is
11  critical, for without it, none of the officers could have known that Dunlevy's death
12  was imminent, or that Dunlevy presented anything more than your average
13  intoxicated subject. Moreover, the officers' lack of knowledge of Dunlevy's serious
14  medical needs is even more compelling when the facts are examined for each
15  individual defendant:

16  • Miller, Jones, and Staal helped arrest Dunlevy and place him in the
17     detoxification cell. During this period, Dunlevy's behavior was consistent
18     with that of an intoxicated individual, and there was nothing about that
19     behavior that suggested a "serious medical need." Moreover, Dunlevy
20     expressly denied that he had taken any illegal drugs. Miller Decl. ¶ 15; Jones
21     Decl. ¶ 12; Vella Decl. ¶ 6. Finally, between the time that Dunlevy was
22     placed in the detoxification cell and the time Dunlevy's body was found, these
23     officers had no interaction with Dunlevy whatsoever, and thus no further
24     information on which to base a claim of "deliberate indifference." Miller

25

26  [10] The court in *Dean* went on to find that there could have been a constitutional
    violation later in the evening, after the officers *looked through the vomit and found*
27  *several chunks of rock cocaine in it*, and thereafter did nothing, and told no one of
    these facts. *Dean v. City of Fresno*, 546 F. Supp. 2d at 801-03, 813-14.
28  [11] The same is true for the non-defendant officers who interacted with Dunlevy.
    Vella Decl. ¶ 10; Metzler Decl. ¶ 9; McSorley Decl. ¶¶ 3-4.

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   Decl. ¶¶ 17-18; Staal Decl. ¶¶ 14-15; Jones Decl. ¶¶ 14-15.

2   • Sellers was off-duty on the night of the Dunlevy event, and had no knowledge
3      of Dunlevy whatsoever until after he had died.  Sellers Decl. ¶ 3.

4   Because none of these facts show that any of the individual defendants had
5   any subjective knowledge that Dunlevy had serious medical needs—including no
6   knowledge that he has swallowed a deadly cocaine bindle—the individual
7   Defendants are entitled to summary judgment on Plaintiffs' wrongful death claim, to
8   the extent that claim is based on a theory of a lack of adequate medical care.  At the
9   very least, the individual officer defendants should be entitled to qualified immunity
10  on this issue under *Katz v. United States,* 194 F.3d 962, 967 (9th Cir. 1999).

11              **b.   No causation.**

12  In addition to a lack of "deliberate indifference," Defendants are entitled to
13  summary adjudication of Plaintiffs' "medical care/wrongful death" claim because
14  there was nothing Defendants could have done to prevent Dunlevy's death, and
15  therefore their alleged "failure" was not the proximate cause of Dunlevy's death.
16  This is the inevitable result based on the following undisputed facts:

17  • The cause of Dunlevy's death was "acute intoxication of cocaine and
18     alcohol."  Juguilon Depo. 29:10 – 31:1, 36:17-21, 70:22 – 71:5, 72:7 – 78:14,
19     78:19 – 81:21, 81:22 – 82:6; Autopsy Report (front page) (Def.'s Exh. H);
20     Toxicological Report (Def.'s Exh. J); Wetli Decl. ¶¶ 5-8; Dr. Wetli's Expert
21     Report, pp. 2-3 (Def.'s Exh. M); Ho Decl. ¶ 5; Dr. Ho's Expert Report, pp.
22     17-18 (Def.'s Exh. O); Collison Depo. 61:11 – 64:15, 77:19 – 79:5, 86:16 –
23     87:17, 95:4 – 96:12; Baise Depo. 28:15 – 29:12, 30:5-33:1, 45:22 – 46:24;
24     Dang Depo. 23:23 – 24:15, 25:17 – 29:10.

25  • The high levels of cocaine in Dunlevy's system stemmed from a sudden,
26     massive infusion of cocaine, which came from the unknown cocaine bindle in
27     Dunlevy's stomach that broke open, ***killing him "within minutes."***  Wetli
28     Decl. ¶¶ 5-8; Dr. Wetli's Expert Report, pp. 2-3 (Def.'s Exh. M); Ho Decl. ¶

-24-

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   5; Dr. Ho's Expert Report, pp. 17-18 (Def.'s Exh. O); Juguilon Depo. 59:14 –

2   62:6, 105:7 – 107:2, 113:20 – 114:4, 116:1 – 118:14, 122:18 – 123:9, 146:15

3   – 147:4, 152:12 – 155:1, 160:16-19, 163:22 – 164:3; Toxicological Report

4   (Def.'s Exh. J); Collison Depo. 79:6-22; Baise Depo. 32:17-22.

5   • As seen in the Jail Video, Dunlevy went from lying down to not moving at all

6   *within about 17 minutes* (between 12:09 a.m. and about 12:26 a.m.).

7   Moreover, any and all seizure-like movements that he made occurred within

8   about *4 minutes*. Jail Video; Austin Decl. ¶ 25.

9   • According to the medical experts (and common sense), the fatal cocaine

10   bindle in Dunlevy's stomach would not have been revealed through any form

11   of routine medical screening. Juguilon Depo. 159:11-21; Wetli Decl. ¶ 8; Dr.

12   Wetli's Expert Report, p. 3 (Def.'s Exh. M).

13   Because Dunlevy's death was a rapid, unforeseeable event, the root cause of

14   which (the cocaine bindle) could not have been discovered through a reasonable

15   medical screening, no failure to provide medical assistance caused Dunlevy's death.

16   As such, Defendants are entitled to summary adjudication of Plaintiffs' wrongful

17   death claim, to the extent it is based on a theory of inadequate medical care.

18   **B.    Plaintiffs' Second Claim for "Survivor Action" Fails For Multiple**

19   **Reasons.**

20   A Section 1983 claim that accrued before a person's death survives that death

21   when state law authorizes it to do so in a manner that is "not inconsistent with the

22   Constitution and laws of the United States." *Smith v. City of Fontana*, 818 F.2d

23   1411, 1416 (9th Cir. 1987) (citing 42 U.S.C. § 1988) (overruled on other grounds by

24   *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1040, n.1 (9th Cir. 1999)); *see*

25   *Robertson v. Wegmann,* 436 U.S. 584, 588-90 (1978). Under California law, an

26   action survives the death of a decedent, and passes to the decedent's legal heirs.

27   CAL. CODE CIV. PROC. § 377.30. As Dunlevy's putative legal heirs, CAL. PROB.

28   CODE §§ 6401-6402, Plaintiffs may therefore legally assert a claim for "excessive

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-25-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1 force" that accrued to Dunlevy before his death.  For two reasons discussed below,
2 however, Plaintiffs' survivorship claim fails in this case.

3            **1.**    **Plaintiffs do not assert any damages that are recoverable**
4                   **under a "survivorship" theory.**

5     As noted above, the parameters of a survivorship claim that is premised on a
6 violation of Section 1983 are governed by state law, to the extent that law is not
7 inconsistent with the purposes of Section 1983. *Smith*, 818 F.2d at 1416 (citing 42
8 U.S.C. § 1988); *Robertson,* 436 U.S. at 588-90.  Under California law, recoverable
9 damages in a survivorship action are expressly limited to economic damages
10 suffered by the decedent, such as medical expenses and property damage, and do not
11 include damages for the decedent's "pain and suffering."  CAL. CODE CIV. PROC. §
12 377.34; *Garcia v. Superior Court*, 42 Cal.App.4th 177, 182, n.4 (1996); *Pease v.*
13 *Beech Aircraft Corp.*, 38 Cal.App.3d 450, 459 (1974); *Stencel Aero Eng'g Corp. v.*
14 *Superior Court*, 56 Cal.App.3d 978, 985 (1976).

15     Although some federal courts have allowed survival-action plaintiffs asserting
16 civil rights violations to recover more than the standard amounts allowed by state
17 law, in all such cases the unconstitutional conduct in question ***resulted in the***
18 ***decedent's death***—a fact that was generally recognized as being significant in those
19 cases. *See, e.g.*, *Garcia*, 42 Cal.App.4th at 183-84 (discussing cases); *Guyton v.*
20 *Phillips*, 532 F.Supp. 1154, 1165-66, 1167-68 (N.D. Cal. 1981) (more than statutory
21 survival damages recoverable where unconstitutional conduct caused decedent's
22 death).  Because here the allegedly unconstitutional actions of Defendants (namely,
23 the alleged "excessive force" and "lack of medical care") did ***not*** cause Dunlevy's
24 death (as set forth above), Defendants assert that Plaintiffs must be limited to the
25 categories of damages recoverable under California law.

26     Here, Plaintiffs' discovery responses have claimed no economic damages—
27 *i.e.*, no damages to Dunlevy's personal property, medical expenses, etc.  Deposition
28 of Kathleen Dunlevy, 100:25 – 101:10, 102:1 – 104:12 (Def.'s Exh. E); Deposition

Rutan & Tucker, LLP
attorneys at law

972/053733-0513
950216.04 a09/09/08

-26-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   of Terry Dunlevy, 170:8 – 171:17 (Def.'s Exh. F); Plaintiffs' Discovery Responses
2   (Def.'s Exhs. P and Q). Because they claim no damages that are recoverable under
3   a survivorship theory under California law, such a claim fails as a matter of law.

4              **2.    The amount of force applied by the officers in arresting**
5                      **Dunlevy was reasonable as a matter of law.**

6         As noted above, the amount of force used to effect an arrest is constitutional
7   under the Fourth Amendment if it is "objectively reasonable," considering such
8   factors as the level of force inflicted and whether the suspect is actively resisting
9   arrest. *Graham*, 490 U.S. at 396-97. Although the reasonableness of the force
10  applied in an arrest is a highly factual inquiry, the issue can be determined as a
11  matter of law in appropriate circumstances. *Headwaters Forest Defense v. Burton*,
12  240 F.3d 1185, 1198 (9th Cir. 2001).

13        Here, the declarations of the officers involved in arresting Dunlevy show that
14  they applied a ***minimal*** amount of force to effect his arrest. In this regard, it is
15  undisputed that Dunlevy resisted the officers' efforts to restrain him and remove him
16  from the White House, by pulling away, placing his hands in his pockets, and
17  refusing to be hand-cuffed. In response to this resistance, the officers first applied
18  mild physical force, such a wrist hold and efforts to force Dunlevy's arms into a
19  position to be handcuffed. Only when these efforts failed did Miller then escalate
20  the degree of force slightly by applying a TASER as a pain-compliance technique.
21  Critically, these minimal efforts were successful in getting Dunlevy under control,
22  and averted any potential danger to both the officers and Dunlevy, causing only
23  "superficial" injuries to Dunlevy in the process. Miller Decl. ¶¶ 3-10; Staal Decl.
24  ¶¶ 3-8; Jones Decl. ¶¶ 3-7.[12] As a matter of law, this minimal degree of force should
25  be considered reasonable. *Graham*, 490 U.S. at 396 ("[T]he right to make an arrest
26  or investigatory stop necessarily carries with it the right to use ***some*** degree of

27  _____

[12]   It must be remembered that at the time of Dunlevy's arrest, none of the officers
28  knew the danger that Dunlevy might pose, including whether he had a weapon or
    other harmful device in his pocket.

1  physical coercion or threat thereof to effect it.") (emphasis added); see also Expert
2  Report (and declaration) of Joe Callanan, pp. 14-17 (Def.'s Exh. V).[13]  At the very
3  least, the individual defendant officers should be entitled to qualified immunity for
4  their conduct under *Katz,* 194 F.3d 962, 967.

5       **C.**    **Plaintiffs' Third and Fourth Claims Fail With the Others.**

6       Plaintiffs' third and fourth claims for relief are for, respectively, supervisory
7  liability against the supervisor officers (such as Chief Sellers) under *Larez v. City of*
8  *Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), and municipal liability against the
9  City under *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978).  To
10  establish liability on a municipality for a constitutional violation, it must be shown
11  that violation resulted from a municipal policy or custom.  *Monell v. Dept. of Social*
12  *Services*, 436 U.S. 658, 690 (1978); *Long v. Idlet*, 442 F.3d 1178, 1187 (9th Cir.
13  2006).  To establish liability on a supervisor in his or her individual capacity for a
14  constitutional violation, a plaintiff must demonstrate that the supervisor (1) "set in
15  motion a series of acts" that the supervisor should have known would have caused
16  others to inflict constitutional injuries, (2) played a "culpable role" in the "training,
17  supervision, or control of his subordinates," (3) "acquiesce[d] in the constitutional
18  deprivations" at issue, or (4) engaged in conduct that showed a "reckless or callous
19  indifference to the rights of others."  *Larez*, 946 F.2d at 646.

20       In either event, no supervisory or municipal liability can be established if no
21  individual officers are found liable.  *City of Los Angeles v. Heller*, 475 U.S. 796,
22  799 ("If a person has suffered no constitutional injury at the hands of the individual

---

23  [13]  Although there are no Ninth Circuit cases discussing the issue, the Eleventh
24  Circuit has ruled that the use of a TASER *is a reasonable means of effecting an*
*arrest of a non-cooperative, unarmed arrestee.  Draper v. Reynolds*, 369 F.3d
25  1270, 1273-1274, 1278 (11th Cir. 2004) (use of TASER reasonable where suspect
was verbally belligerent and uncooperative, but unarmed); *see also Hunter v. Young*,
26  238 Fed.Appx. 336, 338-339 (10th Cir. 2007) (officer entitled to qualified immunity
where he used TASER on prison inmate to obtain compliance with orders to sit
27  down).  Meanwhile, the Ninth Circuit has upheld a jury's determination that "pain
compliance techniques" involving the use of "nonchakus" was a reasonable use of
28  force to cause non-violent protesters to disperse. (*Forrester v. City of San Diego*, 25
F.3d 804, 805, 807-808 (9th Cir. 1994).

Rutan & Tucker, LLP
attorneys at law
-28-
972/053733-0513
950216.04 a09/09/08
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1 police officer, the fact that the departmental regulations might have *authorized* the
2 use of constitutionally excessive force is quite beside the point."); *Watkins*, 273 F.3d
3 at 687 ("If no constitutional violation by the individual defendants is established, the
4 municipal defendants cannot be held liable under § 1983"); *Garcia*, 2004 U.S. Dist.
5 LEXIS 20391, *27-28. Because here there are no viable claims for constitutional
6 deprivations against any of the individual defendant officers (Miller, Jones, Staal, or
7 Sellers), Plaintiffs' claims for supervisory and/or municipal liability likewise fail.

8 **VI.    CONCLUSION.**

9     For Plaintiffs to prevail in this case, one of two new rules of constitutional
10 law have to be created. Either (1) all officers are required to have omniscient
11 knowledge of any and all hidden medical dangers possessed by detainees (including
12 knowledge of swallowed cocaine bindles that could unknowingly erupt and kill the
13 detainee within minutes), or (2) at the slightest sign of any form of strange behavior
14 (including behavior that could easily be explained by alcohol intoxication), all
15 officers must immediately summon medical aid, which must then immediately
16 administer complex and invasive techniques, such as stomach pumping, to avoid a
17 potential death. These rules do not exist, and there is no support for them
18 whatsoever in constitutional jurisprudence. For the reasons set forth in this Motion,
19 Plaintiffs cannot prevail on their claims for constitutional deprivations relating to the
20 death of their son, Matthew Dunlevy, and Defendants' motion for summary
21 judgment or partial summary judgment should be granted.

22

23 Dated: September 9, 2008       RUTAN & TUCKER, LLP

24           By: _____

25              Mark J. Austin
             Attorneys for Defendants CITY OF
26              LAGUNA BEACH, CHIEF
             MICHAEL SELLERS, SERGEANT
27              GUY MILLER, SERGEANT JENNY
             JONES, and OFFICER DUSTIN
28              STAAL

Rutan & Tucker, LLP
attorneys at law

-29-